IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ANDREW MYERS, *et al.*,
      Plaintiffs,

      v.                                                                        Civil No. 3:23cv755 (DJN)

MERCEDES-BENZ USA, LLC,
      Defendant.

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Mercedes-Benz USA, LLC's

("Defendant") Partial Motion to Dismiss Counts I and II of the First Amended Complaint,

("Motion," ECF No. 29).  For the reasons set forth below, the Court will hereby DENY the

Motion.

**I.      BACKGROUND**

**A.      Factual Background**

At this stage, the Court must accept as true the facts set forth in the First Amended

Complaint ("FAC," ECF No. 20).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Against this

backdrop, the Court accepts the following facts as alleged for purposes of resolving the instant

Motion.

On May 27, 2022, Plaintiffs Andrew Myers ("Myers") and Road Runner Transport &

Delivery ("Road Runner") (altogether, "Plaintiffs") purchased a 2002 Mercedes-Benz Sprinter

van from the Mercedes-Benz of Fredericksburg vehicle dealership, an authorized sales, warranty

service and repair agent of Defendant, in Fredericksburg.  (FAC ¶ 4.)  Plaintiffs allege that

Defendant "warranted the vehicle to be fit for its intended purpose of 100,000 miles," and that

"Defendant and its authorized dealers advertised the van to be used for both personal and commercial purposes." (*Id.*, quoting a Mercedes-Benz of Grapevine dealership in Texas that used the following advertising language in a September 2021 posting on its website: "From electricians to carpenters to campers and cross-country adventurers, there is a new Sprinter van for everyone.") Plaintiffs, who bought the vehicle for these dual purposes, paid $72,669.83 for the van. (*Id.*)

On August 1, 2022, Plaintiffs took the vehicle to Defendant's authorized warranty service and repair agent Mercedes-Benz of Beverly Hills after the van's "Check Engine" and "Check Engine Oil" lights turned on, and this agent attempted to repair the van. (*Id.* ¶ 5.) Next, Plaintiffs made two visits in November 2022 to a Mercedes-Benz agent in Coconut Creek, Florida to repair a plug, parking brake light and engine defect and to replace the power inverter, and the agent attempted repairs. (*Id.* ¶¶ 6–7.) Plaintiffs returned to the same Coconut Creek agent on February 21, 2023, seeking repairs related to the van having "jerked repeatedly and harshly while in operation." (*Id.* ¶ 8.) The Coconut Creek agent attempted to repair the defective engine. (*Id.*) On May 16, 2023, Plaintiffs again returned to the Coconut Creek agent, seeking repairs related to the park lock mechanism and the vehicle moving while parked on an incline, and the Coconut Creek agent again attempted repairs. (*Id.* ¶ 9.) Plaintiffs next returned to the Coconut Creek agent on June 13, 2023, to request that the agent repair additional engine defects. (*Id.* ¶ 10.)

Plaintiffs then visited a different Mercedes-Benz agent in Florida — the Mercedes-Benz of Cutler Bay — on September 28, 2023 to attempt repairs related to the vehicle "having no power, cutting off, and not functioning correctly." (*Id.* ¶ 11.) The Cutler Bay, Florida agent

2

attempted repairs on the defective engine but failed to fix the problems, and Plaintiffs represent that the vehicle "has been inoperable ever since then." (*Id.*)

Plaintiffs repeatedly contacted Defendant for assistance with the van, but represent that Defendant's agents "would not consistently or accurately record the Plaintiff's [*sic*] complaints, and consistently ascertained there was nothing wrong with the vehicle." (*Id.*)  In contrast, the Cutler Bay, Florida agent's technicians informed Plaintiffs "that the engine was broken, parts were not available to fix the vehicle, and in some regions the parts did not exist to fix the Sprinter van." (*Id.*)

Plaintiffs state that they have used the van in its as-intended form, i.e., "substantially for personal use," and have also used the van "to deliver various articles of freight pursuant to contracts entered into by the Plaintiffs." (*Id.* ¶ 12.)  However, Plaintiffs have been unable to use the van for this commercial work since February 2023, which they contend has resulted in "substantial lost profits" and "lost earning capacity in the future." (*Id.*)

B.     **Procedural Background**

On November 8, 2023, Plaintiffs filed their original Complaint.  (ECF No. 1.)  On December 14, 2023, Defendant answered, (ECF No. 14), and on February 6, 2024, Plaintiffs moved for leave to file their "First Amended Complaint," (ECF No. 18).[1]  The Court granted

---

[1]     On November 17, 2023, before effectuating service of process against Defendant, Plaintiffs filed an "Amended Complaint" that appeared to substantively comprise a duplicate of their original Complaint.  (ECF No. 5.)  However, Plaintiffs styled their February 9, 2024 amended complaint as the "First Amended Complaint," and this pleading brought an additional claim.  (ECF No. 20.)  Accordingly, because the November 17, 2023 pleading appears to constitute a duplicate of Plaintiffs' original Complaint and because all Parties refer to the February 9, 2024 pleading as the "First Amended Complaint" in their briefing for the instant Motion, the Court henceforth refers to the February 9, 2024 pleading as the "First Amended Complaint." *See* (ECF No. 29) (moving to dismiss the "First Amended Complaint"); (ECF No. 31 at 13) (referring to the February 9, 2024 pleading as the "First Amended Complaint").

Plaintiffs leave to do so. (ECF No. 19.) On February 9, 2024, Plaintiffs filed their FAC, which brings the following claims against Defendants: Count I alleges that Defendants violated the Magnusson-Moss Warranty Act, 15 U.S.C. §2301 *et seq.* ("MMWA") by breaching express and implied warranties in connection with their failure to repair the vehicle; Count II alleges that Defendants violated Virginia's Motor Vehicle Warranty Enforcement Act, Va. Code. § 59.1-207.9 *et seq.* ("Lemon Law") by failing to repair Plaintiffs' vehicle after a reasonable number of attempts; and Count III brings a breach-of-contract claim under the Uniform Commercial Code . (FAC ¶¶ 13–24.) Plaintiffs request $500,000 in damages, plus incidental costs, interest payments "or a comparable replacement camper acceptable to" Plaintiffs, attorneys' fees, expert witness fees, pre- and post-judgment interest and court costs. (*Id.* ¶ 25.)

On March 1, 2024, Defendant filed the instant Motion, requesting dismissal of Counts I and II of the FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 29.) On March 15, 2024, Plaintiffs responded in opposition to the Motion. (ECF No. 31.) On March 21, 2024, Defendant replied, rendering the Motion ripe for review. (ECF No. 32.)

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve factual contests, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court accepts the plaintiff's well-pleaded allegations in the complaint as true and views the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III.    ANALYSIS

### A.    Count I – Magnusson Moss Warranty Act

Defendant argues that the Court should dismiss Count I, because Plaintiffs fail to plausibly allege (1) that the van in question here constituted a "consumer product" under the MMWA and (2) that Plaintiffs provided Defendant with notice and an opportunity to cure before commencing this lawsuit. (Def.'s Mem. in Supp. of Partial Mot. to Dismiss ("Def.'s Mem.") (ECF No. 30) at 4–5.) The Court assesses each argument in turn.

To qualify for damages under the MMWA, the van must be a "consumer product," which the statute defines, in relevant part, as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . . ." 15 U.S.C. § 2301(1)).

In Defendant's view, the van does not qualify as a consumer product, because the van instead constitutes a commercial van "normally used for transport and delivery in the commercial context." (Def.'s Mem. at 4.) Acknowledging that Plaintiffs' actual use of the van does not resolve the question of whether the van qualifies as a "consumer product" under the MMWA, Defendant nonetheless notes Plaintiffs' use of the van "to deliver various articles of freight" and argues that the van's normal usage lies with commercial activity. (*Id.*) Plaintiffs respond by citing multiple other federal district courts' holdings that the MMWA's requirement that a product be *normally* used for personal, family or household purposes does not mean that a product must be *exclusively* used for such purposes. (Pls.' Opp. to Mot. to Dismiss (ECF No. 31) ("Pls.' Opp.") at 12–13.)

For a MMWA claim, a buyer's subjective purpose for purchasing a vehicle stands irrelevant to the analysis. *Eversole v. Ford Motor Co.*, 2012 WL 1161420, at *5 (E.D. Va. Apr. 6, 2012). Indeed, the MMWA statutory implementing regulations specify that "[t]he percentage of sales or the use to which a product is put by any individual buyer is not determinative," as "products such as automobiles . . . which are used for both personal and commercial purposes come within the definition of consumer product." 16 C.F.R. § 700.1(a). Moreover, "[w]here it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage." *Id.*

6

Here, while Plaintiffs did not explicitly state that the vehicle constituted a "consumer product," they did state that they bought the van for use "as a personal vehicle and as a commercial vehicle," (FAC ¶ 4), and that they "have used the subject vehicle as it was intended to be used substantially for personal use," (*id.* ¶ 12). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, the Court infers that the FAC alleged that the van qualified as a consumer product.

Though the FAC makes clear that Plaintiffs used the van for both personal and commercial purposes, Defendant does not cite — and the Court has not identified — case law establishing that the Mercedes-Benz Sprinter van falls beyond the bounds of the MMWA. *See Rogers v. Dow Agrosciencses, LLC*, 2006 WL 3147393, at *9 (W.D. Va. Oct. 31, 2006) (finding that due to a lack of evidence at the pleading stage that the relevant products were "not normally used for personal, family or household purposes," dismissal on the grounds of the "consumer product" definition would qualify as premature).

To be sure, courts at the pleading stage have found certain goods to fall outside the MMWA's scope. *See, e.g., Nolte Enterprises LLC v. Flooring Ctr., LLC*, 2023 WL 8654727, at *3 (N.D.W. Va. June 23, 2023) (collecting cases that found fire sprinklers in commercial buildings and heavy timber equipment that was designed "almost exclusively for commercial purposes," among other items, to not qualify as "consumer products"); *Singtutt v. Paccar Inc.*, 2015 WL 251844, at *3 (E.D. Cal. Jan. 20, 2015) ("A tractor-trailer product is generally used for commercial purposes and is not within the coverage of the Act."). But here, Defendant presents no evidence that the Sprinter van so clearly falls outside the consumer context. And as the implementing regulations stipulate that "[w]here it is unclear whether a particular product is

covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage," 16 C.F.R. § 700.1(a), the Court refrains from creating a new bright-line rule about this specific product at this early stage of the litigation. The Court therefore concludes that Plaintiffs have plausibly alleged that the van qualifies as a "consumer product" under the MMWA.

Defendant also argues that Plaintiffs failed to plausibly allege that they provided Defendant with notice and an opportunity to cure before commencing this lawsuit. (Def.'s Mem. at 5.) However, Plaintiffs allege that they made at least seven visits to three different dealership-agents of Defendant to obtain repair work on the van, with these visits stretching from August 1, 2022 through September 28, 2023. (FAC ¶¶ 5–11.) The MMWA "requires that sellers be afforded an opportunity to cure before an individual consumer may bring an action" under the statute. *In re Shop-Vac Mktg. & Sales Pracs. Litig.*, 964 F. Supp. 2d 355, 362 (M.D. Pa. 2013) (citing 15 U.S.C. § 2310(e)). Here, Plaintiffs' allegations regarding seven different visits to three agents of Defendant within a nearly fourteen-month time period plausibly suggest, at least at the pleading stage, that they gave Defendant notice and an opportunity to cure before bringing this action in November 2023. The Court therefore rejects Defendant's argument on this point.

Because Plaintiffs have plausibly alleged a MMWA claim, the Court will DENY the Motion to Dismiss with respect to Count I.

### B.  Count II – Virginia Lemon Law

Defendant next argues that Count II fails, because (1) Plaintiffs do not constitute "consumers" under Virginia's Lemon Law, and (2) the claim is time-barred. Since a finding that the statute of limitations bars Count II would result in dismissal even *if* Plaintiffs met the Lemon Law "consumer" definition, the Court begins by examining Defendant's second point.

### 1.    Statute of Limitations

"The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). Virginia law requires that plaintiffs commence a Lemon Law action "within the lemon law rights period." Va. Code § 59.1-207.16. The statute defines the "lemon law rights period" as "the period ending 18 months after the date of original delivery to the consumer of a new motor vehicle." Va. Code § 59.1-207.11.

Here, Plaintiffs allege that they purchased the van on May 27, 2022. (FAC ¶ 4.) However, Defendant has introduced an exhibit, entitled "Buyer's Order" and dated April 12, 2022, indicating that Road Runner purchased the van, with a "Date of Sale" and an "In Service Date" of April 12, 2022. (ECF 29-1 at 1.) Defendant thus argues that based upon an April 12, 2022 delivery date of the van, Plaintiffs had to initiate a Virginia Lemon Law action by October 12, 2023, so their failure to file their original Complaint until November 8, 2023 renders Count II time-barred. (Def.'s Mem. at 7.)

In ruling on a motion to dismiss, courts "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). As an important limiting principle, however, the Court may only consider such documents if they qualify as "integral to the complaint." *Id.* A document stands "integral to the complaint" when the claims "turn on, [ ]or are otherwise based on the source in question." *Kumar v. Republic of Sudan*, 2019 WL 13251350, at *7 (E.D. Va. July 31, 2019) (citing *Goines*, 822 F.3d at 166).

Here, Plaintiffs do not contest the authenticity of the "Buyer's Order," dated April 12, 2022, upon which Defendant bases its statute-of-limitations argument. Moreover, the FAC refers to date and purchase details regarding the sale of the van, (FAC ¶ 4), implicitly implicating the sales contract, and Count II appears to turn on the "Buyer's Order" to the extent that this document establishes the date of delivery from which the statute of limitations period begins to run. The Court therefore considers the "Buyer's Order," (ECF No. 29-1), as part of resolving the instant Motion, and notes that the date of delivery indeed appears to have been April 12, 2022.

While Plaintiffs do not contest the relevance of the "Buyer's Order," they point to the Lemon Law's "nonconformity" provision, which states that "[t]he lemon law rights period shall be extended if the manufacturer has been notified but the nonconformity has not been effectively repaired by the manufacturer, or its agent, by the expiration of the lemon law rights period." (Pls.' Opp. at 3, quoting Va. Code §59.1-207.13(c).) And regarding the definition of "notify," Virginia's Lemon Law states that:

> the manufacturer shall be deemed to have been notified under this chapter if a written complaint of the defect or defects has been mailed to it or it has responded to the consumer in writing regarding a complaint, or a factory representative has either inspected the vehicle or met with the consumer or an authorized dealer regarding the nonconformity.

Va. Code Ann. § 59.1-207.11. Using their opposition brief to introduce documentation of May 12, 2023 email correspondence between a Mercedes-Benz employee and Myers, Plaintiffs argue that this correspondence establishes that Defendant responded in writing regarding a complaint about the van well before October 12, 2023, i.e., before the expiration of the Lemon Law statute-of-limitations period, so the statute of limitations does not apply. (Pls.' Opp. at 4–5, citing § 59.1-207.13(c).)

10

Contending that the Court should refrain from considering the May 2023 email, Defendant retorts that the FAC did not include this email, nor did the pleading incorporate the email by reference. (Def.'s Reply at 2.) At best, in Defendant's view, the email "shows a response from customer assistance to a request for a repurchase of the vehicle." (*Id.* at 6.)

Motions to dismiss "generally cannot reach the merits of an affirmative defense," including the statute of limitations, "[b]ut in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Id.* (emphasis in original).

Here, the FAC alleges that Plaintiffs repeatedly contacted Defendant for assistance with the van, but Defendant's agents "would not consistently or accurately record the Plaintiff's [*sic*] complaints, and consistently ascertained there was nothing wrong with the vehicle." (FAC ¶ 11.) The FAC adds that technicians at the Cutler Bay, Florida agent informed Plaintiffs "that the engine was broken, parts were not available to fix the vehicle, and in some regions the parts did not exist to fix the Sprinter van." (*Id.*) Based on these allegations that Plaintiffs and Defendant's agents had "repeated[] contact[]" and Defendant's agents "would not consistently or accurately record" the complaints, the Court cannot infer from the face of the FAC whether these "contacts" included communications that would qualify under Va. Code Ann. § 59.1-207.11 as "notifications" of Defendant. These contacts may have included written communications regarding the van's nonconformities. Plaintiffs' May 2023 email in their opposition brief reflects the FAC's allegations that Plaintiffs and Defendants communicated about the vehicle at some level. But even accepting *arguendo* Defendants' argument that the FAC did not clearly

11

incorporate this email by reference and therefore that the email has no bearing on resolving the instant Motion, the FAC's references to "repeated[] contact[]" and to Defendants' alleged inability to "consistently or accurately record" Plaintiffs' complaints means that this case does not fall within "the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman*, 494 F.3d at 464.

Indeed, the aforementioned factual allegations that Plaintiffs "contacted" Defendant's agents plausibly raise the possibility that (1) Plaintiffs mailed "a written complaint of the defect or defects" to Defendant and/or (2) Defendant "responded to the consumer in writing regarding a complaint, or a factory representative has either inspected the vehicle or met with the consumer or an authorized dealer regarding the nonconformity." *See* Va. Code Ann. § 59.1-207.11 (defining "notify" for purposes of the Lemon Law). Because such possibilities exist, the Court cannot conclusively determine if Plaintiffs met the statutory definition of "notifying" Defendant regarding the van's defects and thereby tolled the statute of limitations pursuant to Va. Code §59.1-207.13(c). Accordingly, since "all facts necessary to the affirmative defense" do not "clearly appear[ ] *on the face of the complaint*," the Court refrains from dismissing Count II based on the Virginia Lemon Law's statute of limitations. *Goodman*, 494 F.3d at 464.

### 2.    "Consumers" under Virginia's Lemon Law

The Court next turns to Defendant's argument that because Road Runner — Plaintiffs' LLC — constituted the sole buyer of record for the van, Plaintiffs do not meet the definition of "consumer" for bringing a Lemon Law claim. Pointing to the Buyer's Order, which listed the "Purchaser's Name" as "Road Runner Transport & Delivery LLC," Defendant asserts that Myers, whom the Buyer's Order does not list as the purchaser, thus does not qualify as a "consumer" under Va. Code § 59.1-207.11 and cannot bring a Lemon Law claim. (Def.'s Mem.

12

at 6, citing ECF No. 29-1 at 1.) And because Road Runner constitutes a commercial entity, this party to the suit necessarily cannot qualify as a "consumer," in Defendant's telling. (*Id.*)

The Lemon Law authorizes "[a]ny consumer who suffers loss by reason of a violation" of its statutory provisions to bring a civil action. Va. Code § 59.1-207.14. The statute defines "consumer" as:

> [t]he purchaser, other than for purposes of resale, or the lessee, of a motor vehicle used in substantial part for personal, family, or household purposes, and any person to whom such motor vehicle is transferred for the same purposes during the duration of any warranty applicable to such motor vehicle, and any other person entitled by the terms of such warranty to enforce the obligations of the warranty.

Va. Code § 59.1-207.11. The statute thus places only two textual limitations on who can qualify as a "consumer": (1) they cannot purchase a vehicle "for purposes of resale" and (2) they must purchase, lease, or receive via transfer a vehicle "used in substantial part for personal, family, or household purposes." *Id.* As Plaintiffs note, the statute therefore does not textually exclude corporations from the definition of "consumers." (Pls.' Opp. at 6.) And the parties do not present evidence that Road Runner purchased the van "for purposes of resale." Road Runner thus does not automatically fail to qualify as a proper plaintiff. Accordingly, the key question is twofold. First, whether Myers can bring this claim as a Plaintiff even though the Buyer's Order does not list him as the purchaser. And second, whether the FAC plausibly alleges that the van qualifies as "used in substantial part for personal, family, or household purposes."

Virginia case law does not provide a readily available answer on whether an individual whose name does not appear on a motor vehicle's sales contract may nonetheless recover under the Lemon Law based on the dual usage by the individual *and* a business of a vehicle *during the same period of ownership*. The Supreme Court of Virginia has held that an individual who purchased a vehicle from a third party may bring a Lemon Law claim even when an earlier buyer

13

bought the vehicle for commercial purposes. *See Subaru of Am., Inc. v. Peters*, 500 S.E.2d 803, 806 (Va. 1998) (holding that "the definition of 'consumer' nowhere denies benefits to a subsequent transferee who is 'downstream' from a business buyer"). But the Complaint does not allege that Myers purchased the vehicle from Road Runner. Rather, Road Runner appears to have been the buyer of record from Defendant and then, taking the factual allegations in the FAC as true, Myers used the vehicle "substantially for personal use," without a formal change in ownership. (FAC ¶ 12.) And Myers does not allege that he qualifies as "any other person entitled by the terms of such warranty to enforce the obligations of the warranty" pursuant to Va. Code § 59.1-207.11.

In the absence of clear guidance from the Supreme Court of Virginia regarding the interpretation of the "consumer" definition in this factual context, the Court returns to the Lemon Law's plain text. Under "settled principles of statutory construction," a court "must first determine whether the statutory text is plain and unambiguous," and "[i]if it is, [a court] must apply the statute according to its terms." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). Similarly, "[t]he Supreme Court of Virginia, as other courts, has made it clear that, when interpreting a statute, courts should 'ascertain and give effect to the intention of the legislature,' and that intent is usually self-evident from the words used in the statute." *Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 599 (E.D. Va. 2020), *aff'd sub nom. Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021) (quoting *Chase v. DaimlerChrysler Corp.*, 587 S.E. 2d 521, 522 (2003)). However, when confronted with an ambiguous Virginia statute and an absence of helpful case law, the Court's "primary objective is to determine the legislative intent in the use of the ambiguous term." *In re Baydush*, 171 B.R. 953, 959 (E.D. Va. 1994) (citing *City of Virginia Beach v. Board of Supervisors*, 435 S.E.2d 382, 384 (Va. 1993)).

Here, the Lemon Law's text does not appear "plain and unambiguous" as to whether Myers can bring this claim. The statute's "consumer" definition encompasses a vehicle's (1) purchaser, (2) lessee, (3) any person to whom the vehicle "is transferred" for usage "in substantial part for personal, family, or household purposes" and (4) "any other person entitled by the terms of such warranty to enforce the obligations of the warranty." Va. Code § 59.1-207.11. But the statute does not define "lessee" or "transferred," leaving at least some ambiguity as to whether an individual who used the van but who does not present documentation of their own formal ownership, purchase or a lease agreement can bring a Lemon Law claim.

Given this ambiguity, the Court considers the legislative intent in using the ambiguous terms. *In re Baydush*, 171 B.R. at 959; *Virginia Beach*, 435 S.E.2d at 384. The General Assembly clearly meant this statute to protect consumers who suffer harm from a defective vehicle. *See* Va. Code § 59.1-207.10 (describing the General Assembly's "intent" behind the statute and stating that "[t]he General Assembly recognizes that a motor vehicle is a major consumer purchase, and there is no doubt that a defective motor vehicle creates a hardship for the consumer"). And considering that the statute emphasizes "personal, family, or household purposes," individuals certainly appear to fall within the scope of contemplated protection.

Furthermore, the Court remains bound to viewing the facts in the light most favorable to Plaintiffs. *Mylan Lab'ys, Inc.*, 7 F.3d at 1134. Though the FAC does not allege that Road Runner transferred legal title to (or formally leased) the vehicle to Myers, Plaintiffs' allegation that they used the vehicle "substantially for personal use," (FAC ¶ 12), plausibly suggests that Road Runner transferred *use and control* of the vehicle to Myers for his personal use during at least certain periods of time. At this juncture of the litigation, the Court therefore observes that (1) Plaintiffs have alleged that they used the vehicle substantially for personal use (logically

15

implying that as between a commercial entity plaintiff and individual plaintiff, the latter used the vehicle more often); (2) the General Assembly intended the Lemon Law to protect consumers from defective vehicles; and (3) the question of whether Road Runner "transferred" or "leased" the van to Myers constitutes a factual one that the Court should refrain from resolving in a motion to dismiss.  In sum, the Court cannot rule out at the pleading stage that Myers — based on these specific factual allegations — qualifies as a "consumer" under the statute, and therefore declines to dismiss the Lemon Law claim on such grounds.

Lastly, the Court determines whether the FAC plausibly alleges that the van qualifies as "used in substantial part for personal, family, or household purposes."  As a threshold matter, the Court declines to give any weight to the deposition transcript that Plaintiffs refer to in their opposition brief, because the FAC does not refer to this deposition, nor does the FAC incorporate the testimony by reference.  The Court thus cannot consider this document at the motion-to-dismiss stage. *See Anand v. Commonwealth*, 2023 WL 7301995, at *6 n.6 (E.D. Va. Nov. 3, 2023) (holding that plaintiff "is bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint"); *Fredricks v. Council of Inspectors Gen. of Integrity & Efficiency*, 2023 WL 7222107, at *6 n.4 (E.D. Va. Nov. 2, 2023) (rejecting litigant's attempt to amend the complaint through his opposition to a pending motion to dismiss).

Defendant similarly seems to desire kickstarting the summary-judgment engine at this premature stage by introducing into the record a vehicle repair order, dated May 23, 2023, which indicates that the van had had 90,055 miles on its odometer at the time of service.  (ECF No. 29-2 at 1.)  To Defendant, "the sheer number of miles, coupled with the nature of Plaintiff Road Runner's business eliminates any 'plausible' claim that the Vehicle was used '*in substantial part*' for personal use as required under the statute."  (Def.'s Mem. at 6.)  But deciding whether

16

this odometer data precludes a finding that Plaintiffs used the van substantially for personal use strikes the Court as a factual question that the Court should not resolve at the pleading stage, when the Court must view the factual allegations in the light most favorable to Plaintiffs. *Mylan Lab'ys, Inc.*, 7 F.3d at 1134. Plaintiffs allege that they "have used the subject vehicle as it was intended to be used substantially for personal use." (FAC ¶ 12). The Court thus concludes that Plaintiffs have plausibly stated a claim under Virginia's Lemon Law.

## IV.    CONCLUSION

The Court will therefore DENY Defendant's Motion to Dismiss Counts I and II, (ECF No. 29).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Date: April 18, 2024

17